Robinson Brog Leinwand Greene
  Genovese & Gluck P.C.
Attorney for Delafield Estates
  Homeowners' Association
1345 Avenue of the Americas, 31st Floor
New York, New York 10105
(212) 603-6300  (telephone)
(212) 956-2164 (facsimile transmission)
Christine H. Black

**Return Date and Time:**
**January 11, 2006 at 11 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re

                       Case No.  05-13634 (ALG)

                       Chapter 11

**DELAFIELD 246 CORP.,**

              Debtor.

-----------------------------------------------------------x

**DELAFIELD ESTATES HOMEOWNERS' ASSOCIATION'S
OBJECTION TO STEVEN COHN, P.C. FIRST INTERIM REQUEST
FOR FEES UNDER SECTION 331 OF THE BANKRUTPCY CODE**

TO:    THE HONORABLE ALLAN L. GROPPER;
        UNITED STATES BANKRUPTCY JUDGE:


           Delafield Estates Homeowners' Association (the "Association"), by its counsel

Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its objection to the First

Interim Request (the "Application") of Steven Cohn P.C., (the "Applicant") under sections 330

and 331 of the United States Code (the "Bankruptcy Code") for fees and reimbursement of

expenses incurred in its representation of Delafield 246 Corp. (the "Debtor") represents and alleges as follows:

## BACKGROUND:

1.       The Association is comprised of the homeowners of Delafield Estates, a 33 lot housing development in the Bronx. The original developer of Delafield Estate sold only 11 of the 33 lots.   In or about August 1991, the Debtor purchased 24 of the 33 lots in the development.  However, only two of the 24 lots the Debtor owns are developed, the other 22 lots are vacant.

2.       The Debtor originally filed for bankruptcy relief on November 29, 2004 in the United States Bankruptcy Court for the Eastern District of New York.  The filing stayed the December 1, 2004 trial on the Association's lawsuit against the Debtor wherein the Association was seeking a judgment for unpaid charges and the Debtor was seeking a determination of its counter-claims asserting that it had made certain payments for the taxes and was therefore entitled to a set-off against the charges.  (the "State Court Action")

3.       In or about April 2005, the Association moved seeking entry of an order granting the Association relief from the provisions of the automatic stay to allow the Association to proceed on the State Court Action.   In connection with its opposition to the motion for relief from the stay, the Debtor commenced an adversary proceeding against the Association claiming that the liens for unpaid charges were not properly recorded, the amounts were improperly calculated and the Debtor paid certain taxes which should have been paid by the individual homeowners and/ or the Association. (the "Eastern District Adversary Proceeding").  The Eastern District Bankruptcy Court granted the motion modifying the stay to allow the State Court

Action to proceed. In the same order, the Court transferred venue from the Eastern District to the Southern District of New York, and dismissed Eastern District Adversary Proceeding finding that the proceeding concerned substantially the same issues as the State Court Action. The foregoing rulings are on appeal in the Eastern District, and a stay pending appeal was denied.

4.    Subsequent to the order transferring venue, the Debtor re-commenced the Eastern District Adversary Proceeding in the Southern District of New York and removed the State Court Action to the Bankruptcy Court.

5.    All of the foregoing matters have been held in abeyance while the parties attempt to work through to a global resolution of the issues among the Debtor, the City of New York and the Association over the issues in the State Court Action, the outstanding tax issues and the requirement that the Debtor file and complete a restoration plan for the development of the vacant 22 lots and properly complete the infrastructure of the development.

## PRELIMINARY STATEMENT:

6.    The Applicant, who has represented the Debtor since October 2004, is seeking as an interim award $200,657.20 in fees for 614 hours of work, together with $2,622.07 in expenses. The Association submits that this case has stalled. A review of the Applicant's time sheets show that while services were rendered on September 16, 2005 to retain a landscape architect, as of December no retention application for either a landscape architect or an infrastructure engineer has been filed. The Association, which to date has not been paid any administrative charges, which have accrued at the rate of $9,600 monthly, and now exceed $115,000, objects to the payment of any administrative expenses to the extent the Association is not paid. Additionally, because there is apparently no cash to make the payments, the Debtor

{00291092.DOC;1}    3

having come before the Court on two occasions seeking authority to borrow funds from an insider, there is no reason to authorize any interim fees at this time. Finally, the Application which was not served upon the Association, fails to comply with the United States Trustee guidelines because there is no project billing analysis, in addition to other technical deficiencies. As such, it is respectfully requested that the Application be denied and that the Court grant such other and further relief as may be just and proper.

## APPLICABLE LAW

7.      The standards for evaluating a fee application are set out at section 330 of the Bankruptcy Code which provides that professionals are entitled to reasonable compensation for actual, necessary service based upon the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services other than in a Bankruptcy case.

8.      As set forth in In re Keene Corp., 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997), "…the statute contains two criteria and before determining the reasonableness of the service, (the services must have been actually rendered) and the Court must make a threshold inquiry into its necessity (internal cites omitted)…." Id. at 696. "The majority of courts hold that a service is necessary if it benefits the estate." (internal cites omitted). Id., at 696.

9.      In Keene, the Court was asked to determine value of the services rendered in a particularly contentious Chapter 11 matter, wherein the debtor's counsel had prosecuted litigation seeking to collaterally attack the validity of settlements in previous lawsuits against the debtor. When determining whether services benefited the estate, the Court should not be guided by hindsight, but rather, "… the test is an objective one, and (the Court) considers 'what services

a reasonable lawyer or legal firm would have performed in the same circumstances.'" <u>Keene,</u> <u>supra.</u>, 205 B.R. at 696 (internal cites omitted).

      10.    In <u>Keene</u> the Court found that the litigation "…appears to have sprung postpetition (sic) from the imagination of Glenn Bailey (principle of the debtor) <u>Id</u> at 697, and in a case wherein the debtor was collaterally attacking previous settlement agreements made in other lawsuits, that the debtor's counsel should have determined at an earlier stage that the proposed litigation suffered from serious legal and factual infirmities. <u>Id.</u> at 701.  There was also a strong undercurrent that the lawsuit was interposed improperly to obtain leverage in negotiations with the creditor's committee. <u>Id.</u> at 698.

      11.    Relying upon <u>In re Taxman Clothing Co.</u>, 49 F. 3d 310, 314 (7th Cir. 1995), wherein the Court held that when a debtor's counsel undertakes to prosecute litigation, that attorney must "make a careful judgment whether the number of billable hours…(is) commensurate with the expected gain," and concluded that "once it become reasonably obvious that the prospective costs of commencing or continuing litigation will exceed any benefit to the estate, the attorney is duty bound to abandon the claim," the <u>Keene</u> Court after previously ordering a substantial hold-back in connection with the interim fee applications, cut the final fee request by approximately 72%.

## ARGUMENT

### A.    The continued focus on a lawsuit of questionable merits is of dubious value to the Estate

      12.    An applicant seeking an award for administrative expenses, including an interim counsel award must demonstrate that the services performed were at the Debtor's request and benefited the Estate. (<u>See</u> generally <u>Keene</u>, <u>supra</u>.)  When the Application is reviewed as a

whole, it demonstrates that the concentration of the services rendered has been in support of the Debtor's theories of how and why it should not be bound by the 1991 in rem agreement and/or why the Association should be paying the Debtor's taxes.  It is submitted that services rendered for litigation of questionable merit may not be of benefit to the Estate and hence, would not be compensable.

13.      As set forth herein, upon transferring of venue from the Eastern District to the Southern District, the Debtor re-filed in this Court, its Omnibus Complaint and removed the Association's State Court Action to this Court. In the Omnibus Complaint the Debtor seeks, inter alia, to impose upon the Association and the individual homeowners, liability for taxes, dating as far back as 1987, which taxes were included in the in rem agreement that the Debtor assumed when it bought the 24 lots in 1991. The Association believes that principles of collateral estoppel and res judicata create serious legal infirmities concerning the viability of the Debtor's causes of action in the Omnibus Complaint.

14.      Upon information and belief, to the extent that the City of New York is also a defendant named in the Omnibus Complaint, it is submitted that prior decisions of the New York Appellate Division in favor of the City also create serious legal infirmities to the Debtor's case.

15.      However, according to the Applicant's time sheets between March 28, 2005 and April 14, 2005, 44.4 hours were expended in working on the Omnibus Complaint, at a cost of $20,265, or approximately 10 percent of the fee requested.

16.      Moreover, it appears from a review of the time sheets that the Applicant expended approximately $45,000 in time working on its tax analysis. While is it submitted that much of this work would have been done pre-petition in connection with the state court actions

with the Association, and the tax foreclosure action with the City, and may be duplicative, much of this time accrues from June 13, 2005 through August 12, 2005, and significantly, is subsequent to the date when the Debtor filed the Omnibus Complaint. As such, an additional 22 percent of the fees requested are for services rendered in connection with performance of an analysis supporting the Debtor's theory to reduce taxes during a time subsequent to when it filed its Complaint.

17.    While the tax reduction may hold some sort of appeal for the Debtor, the Association submits that prior decisions foreclose many, if not all, of the Debtor's arguments, rendering the continued prosecution of the Debtor's lawsuit a misuse of Estate assets. Moreover, the Omnibus Complaint which contains 18 causes of action against the Association and the individual homeowners will require a substantial commitment of attorney time. It is submitted that unless the projected rewards of litigation exceed the amount of the statutory interest, there is no showing that this work benefited and/or that it will benefit the estate. As such, in accordance with the Court's ruling in <u>Keene</u>, the Association requests that any interim award made be subject to a substantial holdback.

**B.    Progress towards a Restoration Plan has Stalled**

18.    The Association submits that the true goal of reorganization is furthered by the ability to develop and/or market the lots, neither of which opportunity can be pursued in the absence of a completed restoration plan.

19.    In or about July 2005, the Debtor moved seeking entry of an order authorizing the sale of 9 of the lots. The Debtor requested that the sale be free and clear and asked the Court to over-ride the existing zoning laws. The extraordinary relief sought prompted objections from both the City of New York and the Association who, relying upon prior final

decisions of the Appellate Division, argued <u>inter</u> <u>alia</u> that the sale had to conform to existing zoning laws. During the hearing, the Court expressed its desire to have the years of state court litigation resolved. On or about July 14, 2005, the Association provided the Debtor with a "wish list" of what it perceived as necessary to satisfy its claims and put this case on a proper footing towards reorganization. At a subsequent Court hearing, all parties agreed that the initial step was to retain the proper professional to formulate the restoration plan.

20.    While the Applicant only seeks compensation through September 30, 2005, a review of the docket shows that up until December 13, 2005 neither the landscape architect nor any of the other professionals necessary to formulate the restoration plan have been retained.

21.    Because the Application fails to project bill, and due to other technical deficiencies such as failing to describe the people involved and the nature of the conversations, it is almost impossible to ascertain what services have been rendered toward the restoration. However, it is significant to note that the Application only mentions the restoration at page 9, sub-paragraphs W and X, which read in pertinent part: "commence preparation of a proposed stipulation…" and "commence preparation of pleadings for the retention of a landscape architect…."

22.    Based upon the foregoing, it does not appear that the Debtor is moving towards a restoration plan that can be effectuated in the near future. Absent progress, the Association objects to any award of counsel fees.

C.    **The Estate Is Not Paying its Administrative Charges
and its Counsel Should not be a Preferred Administrative Creditor**

23.    During the course of this Chapter 11 matter the Debtor has not remitted payments to the Association. At present, the post-petition charges approximate $115,000. The Debtor, whose principal resides at one of the houses in the development, receives the benefits of membership in the Association in terms of the use of the internal roads, the security system and the access to the mail which is provided at the mail house.

24.    Because all administrative expenses have the same priority and as will be shown herein, based upon the Debtor's lack of cash flow and the apparent administrative insolvency of the Debtor, it is improper to favor one administrative creditor to the detriment of the others by authorizing the award and/or payment of fees to only one administrative creditor.

25.    The Debtor apparently has no source of income. On or about November 23, 2005, the Debtor sought Court authority to borrow $150,000 from an insider because the previous borrowing of $50,000, which was authorized in April 2005, is almost exhausted. Similar to the first borrowing of $50,000., the additional $150,000 sought would be secured by a junior lien, subordinate to the tax lien, and what the Debtor describes as the Association's "disputed lien" on 4 of Debtor's 24 the lots. The loan would bear interest, according to the application and would be repayable upon sale of the lot.

26.    While the Applicant will no doubt argue that its fees are guaranteed by Zion New York LLP, an insider of the Debtor, and hence, payment could be made from a third-party source, it is simply impractical to expect an Estate with little or no cash flow and one which is not paying its own carrying charges at this time to pay its counsel.

**D.    The Application does not project bill and
inadequately describes the services**

27.    The failure to project bill and the substantive problems caused thereby were previous discussed and will not be repeated. In addition certain of the entries are for services of absolutely no benefit and based upon the papers filed on line, the Application also has several technical deficiencies such as: (a) a failure to separately describe the services performed and to bill those services separately in tenths of an hour; and (b) the failure of some of the entries to specify with sufficient detail the nature of the services provided.

28.    There are several entries which seek compensation for preparation of discovery against the City of New York in connection with the Omnibus Complaint, the prosecution of which was stayed by the consent of all parties.  Specifically, see the entries for July 5, 1005 "work on document request…" 4.10 hours $1,435.00 and July 17, 2005, "work on document request…" 2.0 hours, $700.00, all totaling $2,135.00.  It is submitted that it is improper for the Estate to be charged with the expenses of this sort.

29.    The Application at Exhibit B (there is another Exhibit which was not filed on line and was not served upon the Association which was served with only the Notice) fails to break-down each of the services by tenths of an hour and repeatedly lumps several services under one entry.  For example on March 14, 2005, at Exhibit B of the Application, the Applicant seeks compensation in the amount of $1,750 for 5 hours of time described as:  "Telephone calls with A. Zion and M. Zion; meeting with A. Zion, M. Zion and Rose; work on papers." Most of the entries are similarly phrased rendering it impossible to determine what services were incurred for what period of time.

30.    Additionally, the entries themselves fail to provide sufficient detail to determine whether the services were of a benefit to the Estate.  For example, on March 23, 2005

{00291092.DOC;1}                                     10

there is entry allegedly supporting a request for $1,950 in compensation for 5.5 hours of time

containing the following description of services "Review and Revise Documents."  Similarly, on

July 14, 2005 wherein 4.1 hours of time or $1,435 in compensation is sought the supporting

entry reads as follows:  "Work on materials and taxes."  Again, there is an entry for July 17,

2005, for $825.00 in compensation for 1.5 hours in time, supported by the description "Meeting

with H. Ross."  This description fails to explain who H. Ross is and what the nature of the

meeting was and whether this work had anything to do with the Debtor, much less whether it

conferred any benefit upon the Estate.

**CONCLUSION**

31.    Because the reorganization efforts in this apparently administratively

insolvent case have stalled, the Applicant has failed to carry its burden that the services for

which it is seeking compensation have conferred a benefit upon the Estate.  Moreover, the

Application is technically deficient, lacking sufficient detail to determine the nature of the

services and whether those services benefited the Estate.  As such, the Association requests that

the Application be denied or alternatively that the Court order a substantial holdback.

**WHEREFORE,** it is respectfully requested that the Applicant's request be

denied, or alternatively that the Court order a substantial holdback and that the Court grant such

other and further relief as may be just and proper.

Dated:  New York, New York
          January 5, 2006

ROBINSON BROG LEINWAND GREENE
    GENOVESE & GLUCK P.C.
Attorneys for the Association
1345 Avenue of the Americas, 31st Floor
New York, New York  10105

By: /s/ Christine H. Black
      Christine H. Black (CHB-6456)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

|  |  |
|---|---|
| DELAFIELD HOMEOWNERS CORP., | Chapter 11 |
|  | Case No. 05-13634 (ALG ) |
| Debtor. |  |

-----------------------------------------------------------x

## AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS

STATE OF NEW YORK      )
                                            ): ss :
COUNTY OF NEW YORK )

        Ethel R. Zwerin being duly sworn, deposes and says that she is over the age of eighteen years, resides in Bronx, New York, and is not a party to this action.

        On the 5th day January, 2006 deponent served the within Delafield Estates Homeowners' Association's Objection to Steven Cohn, P.C. First Interim Request for Fees Under Section 331 of the Bankruptcy Code by depositing a true copy of same enclosed in a post-paid, properly addressed wrapper into the custody of Federal Express for Overnight Delivery prior to the latest time designated by that service for such delivery upon:

Daniel Zimmerman, Esq.
Law Offices of Steve Cohn P.C.
One Old Country Road
Suite 497
Carle Place, New York 11514

Michael A. Cardozo – Corporation Counsel
 of the City of New York – Law Department
100 Church Street
New York, NY 10007
Attn: Lawrence J. Brenner, Esq.

Cantor Epstein & Degenshein, LLP
49 West 37th Street
New York, NY 10019
Attn: Dale J. Degenshein, Esq.

Office of the U.S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004
Attn: Richard Morrissey, Esq.

/s/ Ethel R. Zwerin
Ethel R. Zwerin

Sworn to before me this
5th day of January, 2006
/s/ Christine H . Black
Notary Public, State of New York
No. 02BL4816346
Qualified in Nassau County
Commission Expires Jan. 31, 2007

{00293040.DOC;1}