MICHAEL A. CARDOZO
Corporation Counsel of the City Of New York
Attorney for the City of New York
100 Church Street
New York, New York 10007
(212) 788-1186
By:    Lawrence J. Brenner (LB-7853)
       Assistant Corporation Counsel

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

In Re:

DELAFIELD 246 CORP.,

                                        Debtor.

-------------------------------------------------------------------- x

Hearing Date:
January 11, 2006

Time: 10:00 A.M.

**CHAPTER 11**

Case No. 05-13634 (ALG)

**OBJECTION OF THE CITY OF NEW YORK TO THE FIRST INTERIM FEE APPLICATION OF STEVEN COHN P.C., ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO SECTIONS 330 AND 331 OF THE BANKRUPTCY CODE**

**TO THE HONORABLE ALLAN L. GROPPER,**
**UNITED STATES BANKRUPTCY JUDGE:**

The City of New York, by its counsel, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, attorney for the Department of Finance, the Department of Environmental Protection, the City Planning Commission, the Department of Buildings, and the Fire Department (collectively referred to as the "City"), hereby submits its Objection to the First Interim Fee Application of Steven Cohn P.C., Attorneys for the Debtor and Debtor in Possession, for Allowance of Compensation and Reimbursement of Expenses Pursuant to Sections 330 and

331 of the Bankruptcy Code (the "Application").  In support thereof, the City respectfully states as follows:

## INTRODUCTION

The Application, which seeks an award of over $200,000 in legal fees and expenses to be paid to Debtor's counsel from the bankruptcy estate, should be denied because (1) little or no progress has been made since the filing of Delafield 246 Corp.'s (the "Debtor") chapter 11 petition; (2) the majority of the work performed by Steven Cohn, P.C. ("Debtor's Counsel") has been unnecessary, unreasonable, and duplicative; (3) the fees are in large part for tasks not reasonably likely to benefit the estate; (4) the fees are in large part for tasks not necessary to the administration of the estate; (5) the Application lumps services together making it impossible to determine how much time was spent on specific tasks; and (6) Debtor is administratively insolvent.

## I. BACKGROUND

1.      The salient facts are briefly summarized as follows:  The real property that is Debtor's sole asset consists of 24 lots in a private residential community known as Delafield Estates, situated in Riverdale, New York ("the property").  Debtor purchased the property from a mortgage foreclosure sale by deed dated August 29, 1991.  The Judgment of Foreclosure and Sale ("Judgment") subjected the property to, *inter alia*, "all unpaid taxes, assessments and water rates which are at the time of sale a lien of the mortgaged premises, together with such interest or penalties as may have lawfully accrued thereon to the date of payment . . .".  See Judgment at 5, annexed as Exhibit "1".  At the time of the Debtor's purchase, the tax lien on the property totaled $838,814.52.  See Exhibit "2".  During the first few years of its ownership of the property, Debtor made periodic payments towards the tax arrears.  These payments did not satisfy the arrears and Debtor has made no payments towards the tax liens since January 1998.

2.      In May 2002, in an attempt to prevent the sale of the tax liens on its property, Debtor filed a proceeding against the City in New York State Supreme Court, seeking a preliminary injunction against the sale.  During the pendency of this proceeding, Debtor argued, *inter alia*, that it had paid the tax liens on its property and that the amount claimed as due by the City was wrong.  Due to the passage of time since Debtor's purchase of the property (then eleven years), the City was unable to produce documentation proving the exact amount owed as of August 29, 1991.  The Debtor successfully convinced the trial court that its then-sole principal was unaware of the amount claimed by the City to be owed at the time of its purchase and instead had relied on his (mistaken) interpretation of an in rem installment agreement the property's former mortgagee had entered with the City when making its decision to purchase the property.  A copy of the trial court's decision, order and judgment is attached hereto as Exhibit "3".

3.      The City appealed this decision, and, in the process of preparing the record on appeal, discovered that Debtor had inadvertently inserted as part of Exhibit A to Exhibit F in its Affidavit in Support of Order to Show Cause and Petition, a copy of a tax bill that had been faxed to Preferred Land Title on August 28, 1991, the day before of Debtor's purchase of the property, which showed the amount due as of August 29, 1991.  See Exhibit "2".  The City brought this evidence to the attention of the Appellate Division in its brief, over Debtor's vehement objections.  The appellate court reversed the trial court's decision and found, *inter alia*, that Debtor had actual and constructive notice of the exact amount of the tax liens due on its property at the time of its purchase.  Delafield 246 Corp. v. City of New York, et al., 11 A.D.3d 268, 273 (1st Dept., 2004).  The Court further found that the in rem installment agreement did not, and could not, reduce, settle, or otherwise limit the amount of taxes owed.  Id. at 272.  The

Court did not find any of Debtor's contentions that the amount of the City's tax lien was incorrect to be persuasive, finding instead that "it is undisputed that the delinquent taxes for the years at issue were lawfully assessed and levied." Id. at 272.  The Court further found that "all tax bills and delinquency notices sent to Delafield showed the exact amount of arrears . . .".  Id. at 273.  The Appellate Division did not remand the case for further computations regarding the amount owed; instead it denied Debtor's petition and dismissed the proceeding.  Id. at 269.  The amount owed has not changed since the Appellate Division's decision except for the accrual of statutory interest.

4.      Shortly after receiving the Appellate Division's adverse decision, and on the literal eve of trial for damages in a state court action brought against it by Delafield Estates Homeowners Association, Inc. (the "Homeowners Association"), Debtor filed a voluntary chapter 11 petition in the Bankruptcy Court for the Eastern District of New York on November 29, 2004.  On February 15, 2005, the Debtor filed an application to retain Steven Cohn P.C. as counsel that was later granted by the EDNY Bankruptcy Court on April 7, 2004.  Also, on February 15, 2005, Debtor filed a motion to borrow $50,000 for administrative expenses, secured against four of the lots in the bankruptcy estates, in EDNY Bankruptcy Court.  This motion was unopposed by the City and was granted on April 21, 2005.

5.      On April 14, 2005, Debtor filed an adversary proceeding (the "Omnibus Complaint") naming the City of New York as one of many defendants.  The Omnibus Complaint alleged eighteen causes of action against various defendants.  Each of the eighteen causes of

action asserted by the Debtor had been previously asserted in state court actions and proceedings.[1]

6.      On April 28, 2005, the Honorable Stan Bernstein of the Bankruptcy Court for the Eastern District of New York issued a Memorandum and Order ("Order").  A copy of the Order is annexed hereto as Exhibit "4".  The Order granted the Homeowners Association's April 8, 2005 motion, which had sought to modify the automatic stay provisions to allow it to continue the state court litigation it had commenced against Debtor in 1995 (the "Bronx Action").  The Order also *sua sponte* dismissed the Omnibus Complaint as having duplicative causes of action with the Bronx Action, and transferred venue of the bankruptcy proceeding to the Bankruptcy Court for the Southern District of New York.

7.      On May 9, 2005, Debtor filed an order to show cause for a stay pending appeal of the Order (the "Injunction Motion").  The notice of motion stated that argument would be held on May 27, 2005.  Counsel for both the City and the Homeowner's Association appeared, only to be informed by Judge Seybert's law clerk that the motion was on submission and Debtor's counsel had been informed of this and was asked to inform the other parties.  Debtor's counsel, however, failed to contact counsel for the City or the Homeowner's Association, causing counsel to needlessly travel to Central Islip.  The Injunction Motion was denied on May 27, 2005.

8.      On May 26, 2005, Debtor filed an adversary proceeding in the SDNY (the "Second Complaint") seeking the same relief sought by the Omnibus Complaint.  Once again, the issues raised had been litigated pre-petition, and some of the relief requested had been

---

[1] The duplication of each of these eighteen causes of action is detailed in the City's Objection to Debtor's order to show cause for a stay pending appeal, filed in the District Court for the Eastern District of New York, Case Number 05–CV–02232(JS), Docket Number 5 at ¶¶ 15-18.

deemed duplicative to the relief sought in Bronx Action by Judge Bernstein's April 28, 2005 Order.  See Exhibit "4".  Subsequently, on June 16, 2005, the Debtor filed an appeal of Judge Bernstein's Order in the EDNY.  Debtor's appeal of this Order is currently stayed by stipulation and has not been perfected.

9.      Meanwhile, the City transferred its interest in the tax liens to the NYCTL 2005A Trust ("Trust") in May 2005.  On May 19, 2005, Debtor filed a motion in SDNY Bankruptcy Court to hold the City in contempt for violation of the automatic stay (the "Contempt Motion"), despite Rule 3001(e)(1) of the Federal Rules of Bankruptcy Procedure, which specifically permits the transfer of a claim.  Moreover, Debtor filed the Contempt Motion without any case law supporting its position, only to supplement the Contempt Motion later with a letter citing two cases that were factually divergent from the instant case.

10.      On June 1, 2005, Debtor filed a 53-page motion seeking the sale of nine of its lots free and clear of liens and encumbrances (the "Sale Motion").  The Sale Motion requested this Court to compel the City to, inter alia, issue building permits and certificates of occupancy despite the fact that Debtor had not complied with the covenants and restrictions on the land, zoning, and other rules and regulations, had already unsuccessfully litigated its obligation to comply with these restrictions and regulations in state court, and had already been denied this relief by yet another state court decision.  See City of New York v. Delafield 246 Corp, 236 A.D.2d 11 (1st Dept., 1997), resettled 244 A.D.2d 272 (1st Dept., 1997), lv. to app. den., 91 N.Y.2d 811 (1998); Delafield 246 Corporation v. Department of Buildings of the City of New York, 218 A.D. 2d 613 (1st Dept., 1995).  Additionally, as detailed in the City's opposition thereto, the relief requested in the Sale Motion was beyond the scope of the Bankruptcy Code.

11.     On June 29, 2005, at the direction of this Court, Debtor, the City and the Homeowners Association entered into the first of ongoing stipulations to place all prior commenced litigation on hold so that the parties could negotiate and possibly settle without the need to litigate.  Despite this stipulation and the many legal doctrines that bar the re-litigation of claims, the Debtor served the City with an extensive discovery request dated August 1, 2005, seeking information concerning the real property taxes assessed against its property, both before and after its purchase of the property in 1991.

12.     On July 13, 2005, at this Court's direction, the City provided Debtor with an extensive Declaration detailing what Debtor must do to comply with zoning so that the Debtor may develop its property.  As detailed in this Declaration, one of the first steps Debtor must take is preparing a restoration plan for the City's approval.  The approval of a restoration plan is a condition precedent to the development of the property.  On July 28, 2005, the City, at the Court's suggestion, provided Debtor with lists of experts (landscape architects and infrastructure engineers) that it had dealt with in the past who would be able to develop a restoration plan.

13.     On September 29, 2005, at Debtor's request, the City met with two of Debtor's principals and Debtor's counsel at the City Planning Office to discuss development of the property.  However, despite Debtor's assurances that it had retained an expert who would appear at the meeting to discuss restoration, no such expert was present.  Subsequently, at a hearing held on October 26, 2005, Debtor announced its intention to retain one of the landscape architects on the list submitted by the City, as well as to retain one of the infrastructure engineers.  See October 26, 2005 transcript at 18-19, annexed hereto as Exhibit "5".  Debtor stated that it needed "ten days" to file an expert retention application.  Exhibit "5" at 19, line 13.

14.     As of the November 17, 2005 hearing Debtor had not yet filed a retention application.  <u>See</u> November 17, 2005 transcript at 3-4, annexed hereto as Exhibit "6".  In response to this, the Court stated that "[i]t's critical that we move forward quickly".  Exhibit "6" at 4, lines 3-4.  The Court went on to state that any issues with the retention application needed to be resolved "on an absolutely expedited basis".  <u>Id.</u> at line 8.  Despite this, as of January 5, 2006 no experts had been retained, nor had Debtor filed a retention application.

15.     According to the October 2005 monthly schedule[2] filed by Debtor's Counsel, Debtor has only $534.43 in cash collateral and is thus administratively insolvent and unable to pay the over $200,000 Debtor's Counsel is requesting in the Application.  Meanwhile, as admitted in a November 23, 2005 motion made by Debtor, one of Debtor's principals, Mark Zion, has been using one of the two improved parcels belonging to the bankruptcy estate as his residence throughout the pendency of this bankruptcy proceeding.  <u>See</u> Exhibit "7" at ¶7. However, Debtor has failed to collect any funds from the principal for use and occupancy of Debtor's property.[3]

16.     Although Debtor has been in bankruptcy for over a year now, a disclosure statement has not been approved and a plan has not been confirmed.

## II. THE APPLICATION SHOULD BE DENIED AS MOST OF THE FEES CLAIMED WERE FOR TASKS THAT WERE NOT NECESSARY TO THE ADMINISTRATION OF THE ESTATE, WERE NOT REASONABLY LIKELY TO BENEFIT THE ESTATE, OR WERE UNNECESSARILY <u>DUPLICATIVE.</u>

17.     Section 330 of the Bankruptcy Code authorizes a bankruptcy court at its discretion to allow for the payment of attorney fees and expenses in full or at a reduced rate, but

---

[2] As of the date of this objection Debtor's Counsel has not filed the November and December Monthly schedules.

[3] Moreover, this occupancy without a certificate of occupancy is illegal.

only where the fees and expenses are necessary and reasonable.  <u>See</u> 11 U.S.C. §330(a)(1)(A) and (B).  Moreover, the Code further provides that a court shall not grant compensation where the services provided were an "unnecessary duplication of services or…services that were not… reasonably likely to benefit the estate; or… necessary to the administration of the case."  <u>See</u> 11 U.S.C. §330(a)(4).

18.    A necessary service is one that benefits the estate.  <u>See</u> <u>In re Keene</u>, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997).  Fees and expenses have been held to be unnecessary, however, where the costs outweigh the benefit to the estate so that no reasonable attorney would have pursued such action. <u>See</u>, <u>e.g.</u>, <u>Keene</u>, *supra*, (denying attorney fees for a contempt motion where the fees were greater than any possible recovery).  Likewise, fees and expenses have been held to be unnecessary where the only party to benefit is the debtor.  <u>See</u>, <u>e.g.</u>, <u>In re Oakes</u>, 135 B.R. 511 (Bankr. Ohio, 1991) (denying attorney fees for defense of the debtor's discharge).

19.    In determining whether or not a service benefits the estate, the courts use an objective reasonable person standard.  The test considers "what services a reasonable lawyer or legal firm would have performed in the same circumstances."  <u>Keene,</u> 205 B.R. at 696 (citing <u>In re Ames Dep't Stores, Inc.</u>, 76 F.3d 66, 72 (2d Cir., 1996)).  It is the "applicant [who] bears the burden of proving the reasonableness of compensation from a bankruptcy estate."  <u>See</u> <u>Kovalesky et. al v. Carpenter et al.</u>, 1997 U.S. Dist. LEXIS 16731, 7 (S.D.N.Y. 1997) (citing <u>In re JLM, Inc.</u>, 210 B.R. 19 (B.A.P. 2nd Cir.)).  <u>See</u> <u>also</u> <u>Keene</u>, *supra*, at 695 (citing <u>In re Beverly Mfg. Corp.</u>, 841 F.2d 365, 371 (11th Cir. 1988); <u>In re Spanjer Bros., Inc.</u>, 191 B.R. 738, 747 (Bankr. N.D.I. 1996); <u>In re Bolton</u>, 43 B.R. 598, 600 (Bankr. E.D.N.Y. 1984)).

20.    If fees and expenses are deemed reasonable and necessary, a court must then determine the reasonable amount of compensation to be awarded.  In making its

determination the court must consider, among other things, the time spent on such services. 11 U.S.C. §330(a)(3)(A). In order for a court to review the time spent on services an applicant for fees must list "each type of service. . .with the corresponding specific time allotment. . . [Lumping multiple tasks together makes] it impossible for the Court to determine whether or not the time spent on a specific task was reasonable. Therefore, services which have been lumped cannot be compensated." <u>Matter of Navis Realty, Inc.</u>, 126 B.R. 137, 144 (Bankr. EDNY, 1991) (citations omitted).

21.     As is detailed below, the instant Application seeks fees for services that were neither reasonable nor necessary. Moreover, many of the services for which fees were claimed were either lumped together, making it impossible to determine how much time was actually expended to individual task, or lacked sufficient identification of the services performed for the court to determine whether they were necessary or reasonable. As such, payment of the fees from the bankruptcy estate is barred by §330 of the Bankruptcy Code.

**A.     This Court Should Deny All Fees and Expenses Incurred in the Unnecessary Duplication of Services.**

22.     As detailed more fully at ¶¶ 4-10, *supra*, many of the papers filed by Debtor in this proceeding have been entirely duplicative. For instance, Debtor filed two adversary proceedings in two bankruptcy courts in two different districts, each making substantially the same allegations and claiming the same relief. <u>See</u> ¶¶ 4-5, 8, *supra*. Although its first complaint was dismissed, Debtor filed an appeal of the dismissal after it had already re-filed the complaint in another district. <u>See</u> ¶¶ 8, *supra*. Debtor also made a motion in the EDNY to stay the order dismissing the complaint pending appeal, yet filed substantially the same complaint in the SDNY *before* the EDNY denied its stay motion. <u>See</u> ¶¶ 7-8, *supra*.

23.    The excess paperwork involved in filing in both districts, all of the motions made by Debtor's counsel in the EDNY, the fees and expenses involved in the transfer of venue and the appeal of the EDNY Order were all completely unnecessary. Debtor's counsel should have known that venue in the EDNY was improper and commenced this litigation in the proper venue. The real property comprising the bankruptcy estate was not situated in the EDNY; it was in the SDNY. None of the major parties involved in the bankruptcy had their principal place of business in the EDNY with the exception of the Debtor, and this was a fairly recent development, as evidenced by the fact that during the state court litigation Debtor commenced against the City in 2002, Debtor's principal place of business was 4630 Fieldston Road, Riverdale, New York, (in the SDNY). See Affidavit in Support of Order to Show Cause and Petition at 1, ¶ 2 (a copy of the relevant portion of this document is annexed hereto as Exhibit "8"). Indeed, Debtor's choice of venue was so inexplicable that the EDNY transferred venue *sua sponte.*

24.    Finally, as was detailed by the City in its opposition to Debtor's motion for a stay pending appeal of the EDNY Order, every one of the eighteen causes of action alleged by the Debtor in both its Omnibus Complaint and in its Second Complaint had been previously litigated in state court and/or was the subject of current litigation pending in state court. See City's Objection, filed in the District Court for the Eastern District of New York, Case Number 05–CV–02232(JS), Docket Number 5 at ¶¶ 15-18.

**B.    This Court Should Deny All Fees and Expenses Incurred in the Challenge to the Debtor's Real Property Taxes**

25.    This Court should deny all fees and expenses incurred by Debtor's Counsel for the work it has performed in challenging Debtor's real property taxes as these services were not reasonably likely to benefit the estate, nor were they necessary to the

administration of the case. See 11 U.S.C. § 300(a)(4). Moreover, Debtor's Counsel has not met its burden of proving the reasonableness of the compensation it seeks from the estate. See, e.g., Kovalesky et. al v. Carpenter et al., 1997 U.S. Dist. LEXIS 16731, 7 (S.D.N.Y. 1997). In fact the services provided in challenging the real property taxes have been unnecessary, unreasonable, and duplicative.

26.     The services performed in challenging the real property taxes are unnecessary and unreasonable because the tax claim had been previously litigated in two separate state court lawsuits.[4] The Debtor is barred from further litigation of these claims by principles of *res judicata* and *collateral estoppel,* the Rooker-Feldman Doctrine, and §505 of the Bankruptcy Code.[5] Moreover, Debtor's repeated assertions that the tax claim has not been liquated are entirely without merit. The tax liens were most recently upheld by the Appellate Division mere weeks before Debtor filed its bankruptcy petition, and the amount due has not changed since the Appellate Division's ruling save for the continued accrual of statutory interest. Thus, it is unreasonable for Debtor's Counsel to have devoted the time and resources it has to this fruitless task.

27.     The City further submits that any unlikely benefit resulting from Debtor's litigation of the City/Trust's tax claim would inure to the benefit of the Debtor's principals and

---

[4] The City's/Trust's tax claim is comprised of real property taxes assessed on the Debtor's property for the 1989/90 tax year, with interest. The real property taxes assessed for this tax year were challenged by Debtor's predecessor-in-interest in 1989, in a proceeding brought under Article 7 of the New York State Real Property Tax Law ("RPTL"). This proceeding was dismissed as abandoned in October 1993; such a dismissal is deemed to be on the merits. See RPTL § 718(b); see also Matter of Waldbaum's #122, Inc., v. City of Mount Vernon, 58 N.Y. 2d 181, 820 (1983). Debtor then unsuccessfully challenged the amount of the tax liens in the 2002 proceeding discussed supra at ¶¶ 1-3.

[5] For further discussion of how Debtor's challenges to the real property taxes are barred, see the objections of the City and the Homeowners Association to Debtor's order to show cause for a stay pending appeal, filed in the District Court of New York for the Eastern District, Case Number 05-CV-02232 (JS), Docket Numbers 5 and 4, respectively.

insiders, and not to the benefit of the bankruptcy estate.  Debtor has repeatedly asserted that the aggregate of the claims against Debtor's property are over-secured by the estate.  See. e.g., Application at ¶ 12.  If this is the case, any reductions in Debtor's creditors' claims would only work to increase the eventual profits realized by the Debtor's principals and insiders. Compensation from the estate for services commenced to achieve a result that benefits only the Debtor, rather than the estate, is barred by § 330(a)(4) of the Bankruptcy Code. See In re Oakes, 135 B.R. 511 (Bankr. Ohio, 1991); see also Kohl v. Miller, 95 F. 3d 713 (8th Cir., 1996) (denying fee application where services were to the benefit of the Debtor rather than the estate; services included time spent in "reaffirming and renegotiating [Debtor's] tax debts").

28.    Moreover, it must be noted that any willingness on the City's part to negotiate with respect to the tax claim has been for the purpose of helping Debtor to finally properly develop the property and bring closure to all issues concerning the property, not because Debtor's claims have any legal merit.  The City's willingness to negotiate has been in spite of Debtor's litigious arguments, certainly not because of them.  This has been expressed to Debtor verbally on numerous occasions, and in writing by letter dated September 20, 2005. Simply put, Debtor's litigation of the City/Trust's tax claim is nothing more than a waste of time and resources.

29.    For example, despite a standstill agreement that halted all litigation including both adversary proceedings challenging Debtor's real property taxes, Debtor's Counsel drafted and served an extensive discovery request upon the City.  See ¶ 11, *supra*.  In addition to information related to the tax claim on the property, this discovery request sought information regarding all the real property taxes assessed on the property (and paid, without protest), since the mid 1980's.  This unnecessary and irrelevant discovery request is yet another example of

unnecessary and unreasonable work performed by Debtor's Counsel in connection with Debtor's real property taxes.  No reasonable attorney would, after agreeing by stipulation to stay all litigation, continue to draft discovery requests; nor would such requests, if proper, have related to previously-resolved issues.[6]

30.    Finally, should the Court grant to Debtor's Counsel compensation for the work performed on Debtor's challenge to its real property taxes, the City submits that such fees should be reduced as Debtor's Counsel is not a real property tax expert.  This lack of knowledge and experience has led to many more hours be expended on issues that an attorney with expertise in the area would have expended.  See, e.g., billing slip numbers 7626 (research re tax exemption issue); 7776 (statutory research re: in rem foreclosure); 8502 (research admin code), Exhibit B to Application at 3, 5, and 13.

**C.    This Court Should Deny All Fees and Expenses Incurred by the Sale Motion**

31.    This Court should deny all fees and expenses incurred by Debtor's Sale Motion as Debtor's Counsel has not met its burden of proof that the Sale Motion, which sought relief with no basis in law or equity, and which would have benefited Debtor's principals rather than the estate, was necessary and reasonable.

32.    The Sale Motion proposed to sell nine of Debtor's lots to insiders (ostensibly subject to higher and better offers) and sought an order of this Court compelling the City to issue building permits and certificates of occupancy.  This motion was filed despite the fact that Debtor was fully aware that it could not legally sell these nine lots without first restoring its property, and the fact that it had previously lost a state court action seeking to compel the City

---

[6] It should be noted that Debtor's Counsel agreed to stay the time for the City to respond to said document request after a phone call from Assistant Corporation Counsel Lawrence J. Brenner that informed Debtor's counsel such a request was contrary to the standstill agreement.  However, in a letter dated December 1, 2005, Debtor's Counsel threatened the City with a subpoena to depose City employees despite the ongoing standstill agreement.

to issue certificates of occupancy and building permits.    <u>Delafield 246 Corporation v.</u> <u>Department of Buildings of the City of New York</u>, 218 A.D. 2d 613 (1st Dept., 1995).[7]

33.    Moreover, as this Court observed at a June 14, 2005 hearing involving the Sale Motion, the relief requested by the Debtor in the motion was "extraordinary".  <u>See</u> June 14, 2005 Transcript at page 37, lines 24 and 25, annexed hereto as Exhibit "9".    Although this motion was stayed by stipulation, the Court noted that the relief requested by the Debtor may well be beyond the scope of the bankruptcy code, stating that the Bankruptcy Court "is not an employee of the Building Department…".    <u>Id.</u>    Had the requested relief been granted, the Debtor's principals and insiders would have benefited by transferring formerly encumbranced land to themselves free and clear of liens and encumbrances, while the estate would have gained nothing as the sale price could just as conceivably been realized from a market sale.[8]

34.    Equally troubling is the fact that while virtually all of Debtor's filings, including the instant Application,[9] assert that one of the purposes of the instant bankruptcy is to make Debtor's property buildable and saleable, after over a year in bankruptcy no progress has been made towards completing even the first step in the development process.  Debtor claims that it has been unable to develop the property due at least in part to claimed opposition by the

---

[7] For further discussion of the defects in this motion see the objections of the City and the Homeowners Association to Debtor's First Sale Motion filed in Bankruptcy Court for the Southern District of New York, Case Number 05-13634(ALG), Docket Numbers 50 and 48, respectively.

[8] Debtor filed another motion, this time to sell one of its improved parcels, on December 1, 2005.  Although this motion was filed after the period relevant to the instant Application, it illustrates a continuing problem.  The proposed sale was between Debtor and Mark Zion, Debtor's President, ostensibly subject to higher and better offers.  However, the terms of the proposed contract of sale and the bidding procedures would have created a forum where no outsider would conceivably have bid.  The motion sought to sell the property to the bidder free and clear of liens, encumbrances, and municipal violations, just as the previous Sale Motion had.  Then, on December 5, 2005, Debtor withdrew its December 1, 2005 motion by letter, without explanation.  A copy of this motion is annexed hereto as Exhibit "7".

[9] <u>See</u> Application at 5, ¶13.

City, asserting that the City has refused to grant the building permits and certificates of occupancy it needs to develop the property.  See, e.g., Application at ¶ 12.  However, when confronted with an extensive road map of the steps which need to be taken in order to legally obtain permits and develop the property (see ¶ 12, *supra*), Debtor has failed to even retain the experts needed to draft a restoration plan[10].  Instead, Debtor has focused its efforts on various attempts to circumvent both the covenants and restrictions to which the property is subject, as well as the applicable zoning regulations and municipal rules and requirements.  As detailed above, these efforts are an exercise in futility.

35.    Finally, it is plainly unreasonable to draft, serve and file a rambling fifty-three page Sale Motion requesting relief, with no basis in law or equity.  Debtor's Counsel should not be paid for services that are clearly pointless and not beneficial to the bankruptcy estate.

**D.    This Court Should Deny All Fees and Expenses Incurred by the Contempt Motion**

36.    This Court should deny all fees and expenses incurred by the Contempt Motion as Debtor's Counsel has not met its burden of proof that said motion was reasonable and necessary.

37.    In fact, Debtor's motion to hold the City in contempt for allegedly violating the automatic stay by transferring its tax claim to the NYCTL 2005A Trust was both unreasonable and unnecessary.  The transfer of the City's tax liens clearly did not violate the automatic stay.[11]    The liens were created and perfected prior to Debtor's bankruptcy and the

---

[10] Debtor finally filed an application to retain a landscape architect January 6, 2006 after being instructed to do so by this Court on several occasions.

[11] For a discussion of why the City's transfer did not violate the automatic stay provision of §362 of the Bankruptcy Code, please see the City's object to the Contempt Motion filed in the Bankruptcy Court for the Southern District of New York, index number 05-13634, docket number 49.

transfer of a claim is an act permitted pursuant to rule 3001(e)(1) of the Federal Rules of Bankruptcy Procedure and not an act of enforcement.  The City brought this fact to the Debtor's attention in correspondence exchanged with the Debtor prior to the Debtor's filing of the contempt motion.  Yet, while citing no legal authority to support its argument, Debtor decided to file a contempt motion, supplementing it later with a letter claiming to contain the legal authority upon which the motion was based.  See ¶ 9.

38.     Even assuming, *arguendo*, that the Court were to find that the City's transfer of the tax liens was a violation of the stay, Debtor has not suffered any damages resulting from the transfer.  Such a situation is similar to that in <u>Keene</u>, *supra,* where the Court found that the cost of a contempt motion filed by Debtor outweighed the maximum possible recovery.  <u>Id.</u> at 690.  The Court held that no reasonable attorney would file a motion where the cost outweighed the benefits to the estate, and denied payment of the attorney's fees.  <u>Id.</u>  Thus, even if Debtor were to prevail on the Contempt Motion, Debtor's Counsel should be denied compensation as there has been no showing of damages that would outweigh the costs of the motion.

39.     Moreover, a reasonable attorney with Debtor's Counsel's knowledge of what it believed to be impending harm to the bankruptcy estate, would have brought an order to show cause for an injunction to prevent the transfer, rather than a contempt motion after the fact.  This lack of action on Debtor's Counsel's behalf demonstrates the lack of harm and damages to Debtor incurred by the transfer.  Thus, Debtor's Counsel should not be compensated for the services provided for the Contempt Motion where there was no harm or damage to the estate and the costs of litigation clearly outweigh any alleged benefit to the estate.

**E.     This Court Should Deny All Fees and Expenses Where the Application Fails to Properly Identify the Services Performed and "Lumps" Multiple Services Together.**

40.     Debtor's Application lumps multiple services together making it impossible to evaluate the time spent on a particular project.  For example, slip number 7797 bills seven and a half hours for "[r]eview materials re: NYC; telephone call with MZ; call back to Burn, Esq.; telephone call with MZ; telephone call with NYC Attorney, Lonica Smith; fax copy of petition to L. Smith; review further documentation."  See Exhibit B to Application at 5. In those seven and a half hours on January 10, 2005 Debtor's Counsel claims to have performed seven different tasks.  However, due to the lumping of task there is no way to determine how much time was spent on each task and whether the time spent on an individual task met the minimum requirements for billing.  Virtually every time entry submitted lists multiple tasks performed during the time listed.

41.     Additionally, in many cases the Application fails to properly identify the services performed, making it impossible to determine whether the fees were reasonable or related to the administration of the bankruptcy estate.  For instance, slip number 8475 bills a total of seven full hours for "[t]elephone call to M. Zion; to Bronx County re: assessor, etc."; while slip numbers 9221 and 9222 bill an unspecified amount of time for "research re successor in interest"; slip number 7836 bills an unspecified amount of time for "telephone call with MZ re: timing on ownership and tax returns"; and slip number 8718 bills for "work on trial outline and related matters."  Exhibit B to Application at pp. 11, 23-22, 6 and 16, respectively.  Finally, the time entries are not categorized by project, making it impossible to determine how much time was spent on projects that may have been reasonable and necessary as opposed to ones that were not.

42.     Where it is impossible to determine the exact task performed and the amount of time spent thereon, an award of attorney fees from the bankruptcy estate is improper.

See, e.g., In re Art Shirt, Ltd., 30 BR 318 (Bankr. ED Pa., 1983) (fees disallowed where counsel impermissibly lumped several services together in one entry).  Therefore, the Application should be denied to the extent it includes fees either lumped together, improperly identified, or unrelated to the administration of the bankruptcy estate.  Since the Application lacks sufficient information to determine how much time was actually spent on tasks that were unreasonable and unnecessary, the City is constrained to request that the entire Application be denied.

### III.  IN THE ALTERNATIVE, IF THIS COURT IS INCLINED TO APPROVE A PORTION OF THE INTERIM FEE APPLICATION, UNDER THE CIRCUMSTANCES OF THIS CASE PAYMENT SHOULD BE HELD BACK.

43.    Section 331 of the Bankruptcy Code provides the bankruptcy court with the discretion to grant applications for interim compensation.  Section 330 of the Bankruptcy Code states in relevant part "the court may allow and disburse to such applicant such compensation or reimbursement."  11 U.S.C. §330.  When granting "interim compensation, courts often 'holdback' a portion of an interim allowance pending final review of the reasonableness of the aggregate fees and disbursements paid to a particular applicant."  See In re Child World, Inc., 185 B. R. 14, 18 (S.D.N.Y. 1995) (stating the general proposition).

44.    For the reasons stated above, it is the City's position that the fees and expenses incurred in repeatedly challenging Debtor's real property taxes, the Sale Motion, the Contempt Motion, Debtor's multiple complaints in two different Districts, and the appeal of the dismissal of the duplicative Omnibus Complaint were unreasonable, unnecessary, and duplicative.  Moreover, as demonstrated above, there has been little, if any, progress towards reorganization of the estate to date, yet Debtor's counsel has accumulated over $200,000 in fees within the first ten months of this proceeding.  Meanwhile, according to the monthly statements filed by the Debtor, it remains administratively insolvent with a mere $534.43 in liquid assets as

of October, 2005.    Debtor's principals and insiders have continued to refuse to contribute anything substantial towards the administration of the estate, yet one of the principals continues the use the estate's property as his primary residence without paying any use and occupancy.

45.    Debtor continues to assert that the Debtor's debts are over-secured by the estate, yet it has not submitted any evidence of the estate's value.    Indeed, Debtor's assertions as to the value of the property have not been at all consistent.    For example, in its Schedule A, Debtor declared the property to be worth $13 million, while in the instant Application, Debtor's counsel asserts that the property's value "could easily run between $15 and $25 Million".    <u>See</u> Application at ¶ 12.    Meanwhile, the debt owed to the City/NYCTL 2005A Trust alone currently surpasses $6.5 million.    Under these circumstances it does not seem certain at all that in the eventual end of this matter the debt will be over-secured by the estate.    The City submits that the estate's creditors interests should not be jeopardized to finance meritless, unnecessary and duplicative litigation.    Therefore, the City respectfully requests that should the Court decide to grant the compensation sought by the Application, that the Court holdback payment.

## **CONCLUSION**

WHEREFORE, the City respectfully requests that the Application be denied in whole or in part, and that the Court grant such other and further relief as it deems just, proper and equitable.  In the alternative, if this Court grants the Application, in whole or in part, the City respectfully requests that the Court holds back all approved compensation until such time as restoration of Debtor's real property is completed, a disclosure statement is approved, a plan is confirmed and Debtor has the cash collateral to pay such fees and expenses.

Dated:        New York, New York
              January 6, 2006


                           MICHAEL A. CARDOZO
                           Corporation Counsel of the City of New York
                           Attorney for the New York City
                                   Department of Finance
                           100 Church Street
                           New York, New York 10007
                           (212) 788-1186


                           By:    /s/ Lawrence J. Brenner
                                  LAWRENCE J. BRENNER (LB-7853)
                                  Assistant Corporation Counsel